IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| RONALD WADE, | : | |
| Petitioner, | : | Case No. 3:07cv00346 |
| vs. | : | District Judge Walter Herbert Rice |
| | | Magistrate Judge Sharon L. Ovington |
| WARDEN, Lebanon Correctional Institution, | : | |
| | : | |
| Respondent. | : | |
| | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. INTRODUCTION

After discovering Valentine Day cards from another man in his wife's purse, an argument ensued and Petitioner killed her with a samurai sword. The jury was instructed on both voluntary manslaughter and murder. After deliberation, the jury returned a verdict of murder. Petitioner was subsequently sentenced to fifteen years to life. This matter is now before the Court upon Petitioner's Petition for Writ of Habeas Corpus (Doc. # 1), Respondent's Return of Writ (Doc. #5), Petitioner's Reply (Doc. # 6), and the record as a whole.

## II. FACTUAL BACKGROUND

The Montgomery County Court of Appeals, Second Appellate District of Ohio, set forth the facts of this case on Petitioner's direct appeal:

> **[\*P2]** Defendant and his wife, Cynthia Wade, were married six years and had two four-year old twin boys. In the days leading up to her murder on March 25, 2005, Mrs. Wade had asked Defendant for a divorce. Two or three weeks

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

prior to March 25, 2005, Defendant told a co-worker that 'his wife could go but his boys weren't going anywhere.' Another co-worker heard Defendant tell someone on the phone on March 21 or 22, 2005, 'Bitch, if you leave me, I'll kill ya.'

[*P3] Mrs. Wade submitted an application to rent an apartment at the Residenz apartment complex in Kettering. On her application Mrs. Wade listed herself, her two sons and another man, Jonathan Smith, as the occupants. The manager at the Residenz apartment complex contacted the manager at Georgetown of Kettering apartment complex, where the Wades lived at the time, to verify Mrs. Wade's rental history. The manager at Georgetown of Kettering, concerned that Mrs. Wade might be getting ready to break her lease which was not up until late September 9, 2005, called and left a message on the Wade's answering machine on March 23, 2005, asking Mrs. Wade to let management know whether she intended to move. Defendant intercepted that message and mentioned it to his sister the following day.

[*P4] On March 25, 2005, Defendant was not at work, and he spent the day at a friend's house. Defendant returned home about 5:00 p.m. Mrs. Wade told Defendant a friend of his had been there and just left, and that if Defendant hurried he could probably catch him. Defendant then left in Mrs. Wade's vehicle to try and catch his friend. When Defendant exited the parking lot and stopped at Far Hills Avenue for oncoming traffic, Mrs. Wade's bookbag fell over and two Valentine's cards spilled out. Defendant read the two cards, which contained love notes written to Mrs. Wade by another man, Jonathan Smith.

[*P5] Defendant testified that when he saw the cards he had to pick his heart up off the floor. Defendant immediately returned home to confront his wife about the cards. After an angry exchange of words about the cards, during which Defendant said, 'What's this shit,' and Mrs. Wade replied, 'What the f- you think it is you dumb mother f-----,' Mrs. Wade went back inside their upstairs master bedroom. Defendant followed her.

[*P6] When Defendant entered the bedroom, Mrs. Wade held a samurai sword in her hands that Defendant kept hidden under the mattress. According to Defendant, after he asked his wife if she was going to stab him and told her that she couldn't hurt him, Mrs. Wade stabbed him three or four times in the abdomen. Defendant then took the sword away from Mrs. Wade and, 'after something jumped in him,' Defendant stabbed her one time in the abdomen. Mrs. Wade put the bed covers over the blade and pulled the sword out of her

2

abdomen and began to run down the stairs. She collapsed and fell down the stairs, landing near the front door.

**[\*P7]** Mrs. Wade suffered over thirty stab wounds, including five wounds that struck vital organs and were each potentially fatal. Although he testified that he doesn't remember anything that occurred after his wife fell down the stairs, Defendant called his sister, Jackie Williams, and told her, 'I killed Cindy. She's laying on the floor behind the door. I'm gonna kill myself. Tell the kids I love em.' Jackie Williams rushed to Defendant's apartment and saw Defendant's and his wife's vehicles were in the parking lot. Ms. Williams pounded on the doors and windows of Defendant's apartment and repeatedly called Defendant's phone. When Williams got no response, she called police.

**[\*P8]** When police forcibly entered Defendant's apartment hours later they discovered Mrs. Wade's body lying behind the front door. She was deceased. Defendant was lying on the couch with a slashed neck and six stab wounds in his abdomen. The sword was laying across his body and he was holding pictures of his two sons. Despite Defendant's claim that his wife stabbed him first in their upstairs bedroom, none of the blood found upstairs was Defendant's. His blood was found downstairs near his wife's body and near the couch where police found him.

**[\*P9]** Defendant was indicted on one count of murder in violation of R.C. 2903.02(A). Following a jury trial, Defendant was found guilty as charged. The trial court sentenced Defendant to fifteen years to life.

(Doc. #5, Exhibit 7, Opinion and Entry, pp. 1-2).

### III. STATE COURT PROCEEDINGS

Represented by different counsel than at trial, Wade timely appealed his conviction and sentence to the Second District Court of Appeals, Montgomery County, Ohio and set forth the following three assignments of error:

1. The trial court erred when it denied the Defendant's multiple motions for acquittal and the conviction rests upon legally insufficient evidence.

2. The trial court erred when it overruled the Defendant's objections to evidence when the nature of the pictures at issue were substantially prejudicial and cumulative and the probative value was minimal.

> 3. The Defendant was denied his constitutional right to an attorney because of ineffective assistance of counsel.

(Doc. #5, Exhibit 4, Wade's Brief, Case No. 2006CA21530). On March 9, 2007, the Court of Appeals affirmed the judgment of the trial court. (Doc. #5, Exhibit 7).

On April 11, 2007, Wade filed a timely pro se appeal of the appellate court's decision in the Ohio Supreme Court setting forth the following three propositions of law:

> 1. Where a defendant fulfills his burden of proof for the affirmative defense of manslaughter on the charge of murder, a resulting conviction for murder violates due process based upon insufficient evidence.
>
> 2. Where a defendant has conceded cause and manner of death, it violates due process of law and a fair trial right to publish unnecessary and inflammatory autopsy photos to the jury over objection.
>
> 3. Where trial counsel fails to make the adversarial testing process work at trial, the defendant's Sixth Amendment rights have been violated.

(Doc. #5, Exhibit 8, Case No. 07-0641). On July 25, 2007, the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question. (Doc. #5, Exhibit 10)

## IV. FEDERAL HABEAS CORPUS

Wade, proceeding *pro se*, filed the instant Petition for a Writ of Habeas Corpus and asserted the following grounds for relief:

> **GROUND ONE**: DENIAL OF SUBSTANTIVE & PROCEDURAL DUE PROCESS OF LAW – 14th AMENDMENT
>
> **Supporting Facts**: 'Petitioner, although failing to prove affirmative defense of self-defense proved that he acted under sudden fit of rage or passion (voluntary manslaughter) which was not rebutted by State, requiring judgment of acquittal of murder conviction, conviction for voluntary manslaughter.'
>
> **GROUND TWO**: DENIAL OF PROCEDURAL DUE PROCESS OF LAW – 14th AMENDMENT
>
> **Supporting Facts**: 'During trial over objection, State was allowed to introduce

4

cumulative and highly inflammatory autopsy photos of deceased that inflamed jury.'

**GROUND THREE**: DENIAL OF 6th & 14th AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL COUNSEL

**Supporting Facts**: 'Trial counsel failed to make adversarial process work by failing to object to several dozen objectionable acts of State prosecutor.'

(Doc. #1).

## V. MERITS

### A. The Antiterrorism and Effective Death Penalty Act (AEDPA)[2]

Under the AEDPA, a Writ of Habeas Corpus may not issue with respect to any claim adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The phrases "contrary to" and "unreasonable application" have independent meanings:

> A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the law set forth in ... [Supreme Court] cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case. The focus on the latter inquiry is whether the state court's application of clearly established federal law is objectively unreasonable ... and an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002)(citation omitted); *see Broom v. Mitchell*, 441 F.3d 392, 398 (6th Cir. 2006)(quoting in part *Bell v. Cone*, 535 U.S. 685, 694 (2002)(citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

---

[2] Codified in large part in 28 U.S.C. §2254. *See* Pub.L. No. 104-132, 110 Stat. 1214.

"A decision is an 'unreasonable application' of clearly established Supreme Court law if a 'state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case.'" *Gray v. Moore*, 520 F.3d 616, 621 (6th Cir. 2008)(quoting in part *Williams*, 529 U.S. at 413). An unreasonable application of federal law is one that is 'objectively unreasonable' and not merely incorrect." *Sinkfield v. Brigano*, 487 F.3d 1013, 1016 (6th Cir. 2007)(citations omitted).

### B. Ground One: Insufficient Evidence

The substance of Petitioner's first ground for relief claims that the evidence was insufficient to support his conviction. Evidence is sufficient to support a conviction if, after viewing the evidence (and the inferences to be drawn therefrom) in the light most favorable to the prosecution, the court can conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Apanovitch v. Houk*, 466 F.3d 460, 488 (6th Cir. 2006); *Brown v. Palmer*, 441 F.3d 347, 351 (6th 2006); *United States v. Jamieson*, 427 F.3d 394, 402 (6th Cir. 2005). "This requires successful challengers to meet a very high threshold." *Apanovitch*, 466 F.3d at 488 (citing *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

This standard of review does not permit the court to make its own subjective determination of guilt or innocence; the standard gives full play to the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts. *Herrera v. Collins*, 506 U.S. 390, 401-02 (1993); *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). The court applies the *Jackson* standard "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16. This due process guarantee of sufficiency of the evidence extends only to facts needed to establish the elements of the crime, and not to the state's burden to prove the absence of an

6

affirmative defense. *Allen v. Redman,* 858 F.2d 1194, 1197-98 (6th Cir. 1988).

On federal habeas review under the AEDPA, the question is whether the Ohio Court of Appeals' application of the *Jackson* standard was reasonable.

Petitioner argues that he is guilty only of voluntary manslaughter and the evidence of murder is insufficient. The Ohio Court of Appeals found the following in that regard:

> **[\*P19]** In convicting Defendant of murder, the jury necessarily rejected voluntary manslaughter. Defendant argues that the evidence was not legally sufficient to support his murder conviction. That does not follow merely because Defendant's conduct could have supported a conviction for voluntary manslaughter instead of murder, which was an issue for the jury to decide.
>
> **[\*P20]** The principal difference between murder and voluntary manslaughter is that voluntary manslaughter involves a mitigating element: some serious provocation by the victim which is reasonably sufficient to incite a defendant to use deadly force. (citation omitted). To be serious, the provocation must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control. (citations omitted). Words alone are not legally sufficient, in most situations, to incite the use of deadly force including admissions of infidelity. (citations omitted).
>
> **[\*P21]** After Defendant read his wife's two Valentine's cards and discovered that she was having an affair, he promptly confronted her. Angry words were exchanged and Mrs. Wade verbally taunted Defendant, admitting that she was having an affair. As we previously noted, however, admissions of infidelity alone are legally insufficient provocation to incite a person into using deadly force. (citation omitted).
>
> **[\*P22]** Defendant nevertheless argues that more than mere words are involved in this case because, in addition to his wife's admitting she was having an affair, his wife threatened him with the samurai sword and then stabbed him three or four times in the abdomen, and that those facts and circumstances, taken together, constitute sufficient serious provocation to bring on a sudden passion or sudden fit of rage and incite Defendant into using deadly force. Even were we to agree that all of those factors when combined could constitute serious provocation, the problem with Defendant's claim is that the evidence presented at trial, when construed in a light most favorable to the state, does not support Defendant's version of the events.

7

[*P23] Construed in a light most favorable to the state, the evidence demonstrates that Defendant knew weeks before this killing that his wife wanted a divorce and was planning on leaving him. Defendant told co-worker Mary Cooley that his wife could go, but his boys weren't going anywhere. Defendant also expressed before this murder what he intended to do if his wife left him. Only three or four days before this murder, co-worker Jeremy Hawks heard Defendant tell someone on the telephone who reasonably could only have been Defendant's wife, "Bitch, if you leave me, I'll kill ya."

[*P24] Just two days prior the murder, Defendant intercepted a phone message intended for his wife, wherein the manager of the apartment complex where they lived asked Mrs. Wade to call her to discuss Mrs. Wade's intention to move. Defendant spoke to his sister about the phone message the day before the murder occurred, indicating that he had gotten a phone message about his wife checking out another apartment.

[*P25] Finally, although Defendant claims that his wife stabbed him first when they were in their upstairs master bedroom, none of the blood found in that bedroom or anywhere upstairs belonged to Defendant. Only Mrs. Wade's blood was found upstairs. Defendant's blood was discovered downstairs in the area where his wife's body was discovered, near the living room couch where police found Defendant. Furthermore, the call Defendant made to his sister after he attacked his wife supports a finding that this was a murder/attempted suicide. Defendant said, "I killed Cindy. She's laying on the floor behind the door. I'm going to kill myself. Tell my kids I love em."

[*P26] Viewing the evidence in a light most favorable to the State, as we must, a rational trier of facts could find that there was not sufficient serious provocation by Mrs. Wade to bring on a sudden passion or sudden fit of rage and incite Defendant into using deadly force, and that Defendant purposely killed his wife because she was having an affair and was going to leave him, and that all of the essential elements of murder were proven beyond a reasonable doubt. Defendant's conviction is supported by legally sufficient evidence, and the trial court properly overruled his motions for acquittal.

(Doc. #5, Exhibit 7, p. 7-10).

Petitioner's claim that he is only guilty of voluntary manslaughter is based solely on his own testimony. As noted in the state court of appeals' opinion, evidence the prosecution presented at trial contradicted Wade's version of these events.

8

The Ohio Court of Appeals applied *Jackson* in its analysis of Petitioner's claim of insufficiency of evidence. It cited specific evidence on the record from which a reasonable juror could find the presence of the elements of murder. The jury in Petitioner's trial was instructed on both murder under Ohio Revise Code § 2903.02(A) and voluntary manslaughter under Ohio Revised Code § 2903.03(A). (Doc. # 8-4, Tr. 406-410). The jury returned a verdict of murder. (Doc. # 8-4, Tr. 416).

Although Petitioner testified regarding his version of how the killing occurred, the trier of fact resolved the conflict in Petitioner's testimony, as compared to the other evidence of guilt, against him and that resolution is well within the bounds of reason. The trier of fact made an entirely rational decision to convict Petitioner of murder. Further, there was substantial evidence at trial whereby a rational trier of fact, viewing the evidence in the light most favorable to the State, could have found beyond a reasonable doubt that Petitioner was guilty of murder.

Given the law and the facts in this case, Petitioner has not demonstrated that the state court decision, as it pertains to sufficiency of evidence, was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States or that the decision was based on an unreasonable determination of the facts in light of the evidence presented. Therefore, Petitioner is not entitled to habeas relief on this claim.

### C. Ground Two: Admission into Evidence of Autopsy Photographs

It is a general rule that assertions of error in evidentiary rulings cannot support the grant of relief in habeas corpus. *Walker v. Engle*, 703 F.2d 959 (6th Cir. 1983); *Bell v. Arn*, 536 F.2d 123, 125-26 (6th Cir. 1976). It is well established that "…errors of state law, especially errors based on a trial court's evidentiary rulings, do not, in and of themselves, violate the constitution." *Buell v. Mitchell*, 274 F.3d 337, 357 (6th Cir. 2001) (quoting in part, *Neumann v. Jordan*, 84 F.3d 985, 988 (7th Cir. 1996)).

Such errors will result in the granting of a writ of habeas corpus only if they result

9

"in the denial of fundamental fairness, thereby violating due process." *Waters v. Kassulke*, 916 F.2d 329, 335 (6th Cir. 1990).

The Ohio Court of Appeals held the following on this issue:

[*P31]  The State had the burden to prove that Defendant purposely caused his wife's death.  R.C. 2903.02(A).  The particular cause of her death was susceptible to proof through the testimony of the physician who performed the autopsy.  The slides/photographs were clearly probative of such matters and were presented during the testimony of Dr. Russell Uptegrove, who performed the autopsy on Cynthia Wade, for the purpose of explaining to the jury his opinion concerning the cause of Mrs. Wade's death by illustrating the location and severity of the stab wounds inflicted by Defendant and his purpose in doing so.  (citation omitted).  Each photograph had independent probative value for that purpose, and we cannot say that the probative value was substantially outweighed by the danger of unfair prejudice to Defendant.

[*P32]  Defendant argues that several of the slides depict especially gruesome matters that go beyond the burden the State had to meet.  He complains that several exaggerate the wounds he inflicted because, in them, the body is manipulated to show the wounds in a way that enlarges the laceration shown.  Also, the several photographs of internal organs that were removed from the victim's body were unnecessary.

[*P33]  The State had the burden to prove that Defendant acted 'purposely,' that is, with the specific intention to cause his wife's death. R.C. 2901.22(A).  The slides showing internal organs and other body parts are illustrative of the ferocity of Defendant's attack.  For example, the victim's liver is shown severed in two, (State's Exhibit 21-A), as it was found when her body was opened.  Also, the photo of the sternum and rib cage (State's Exhibit 15-A) depict deep, multiple stab wounds that would require a great effort to inflict.

[*P34]  Such evidence is probative of the allegation that the Defendant acted purposely to cause his wife's death.  It is therefore relevant and was admissible for that purpose.  *Evid. R. 401, 402*.  It was likewise admissible to rebut the proposition that Defendant had instead knowingly engaged in the conduct that caused his wife's death, which is the finding required by the voluntary manslaughter instruction Defendant requested and which the court gave.

> **[*P35]** Finally, we are not persuaded that photos showing the body manipulated are unduly prejudicial. They illustrate the extent of the wounds Defendant inflicted. Autopsy photos are inherently prejudicial when they depict gruesome, graphic wounds, but when offered to prove elements of the offense that the State has the burden of proving, they are usually not unfairly prejudicial. That is the case here. As to the sheer number of autopsy photographs introduced, Defendant does not complain that they are duplicative. We note that Defendant was alleged to have inflicted over thirty separate stab wounds to his wife, and each photo he complains about fairly depicts a separate wound or injury, all of which are a product of Defendant's handiwork. That evidence is damning, but not unfairly prejudicial. The trial court did not abuse its discretion in admitting the autopsy photographs.

(Doc. # 5, Exhibit 7).

This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. The Sixth Circuit has expressed reluctance to find constitutional error in the admission of gruesome or provocative photographs as the admission of such evidence usually fails to raise "the spectre of fundamental fairness such as to violate federal due process of law." *Cooey v. Coyle*, 289 F.3d 882, 894 (6th Cir. 2002). The admission of relevant photographs of a crime scene or a victim, even if gruesome, does not deprive a criminal defendant of a fair trial. *See Cooey*, 289 F.3d at 894 (citing *Gerlaugh v. Stewart*, 129 F.3d 1027, 1032 (9th Cir. 1997) for proposition that such photographs do not raise the "spectre of fundamental fairness such as to violate federal due process of law.").

Although Petitioner's counsel objected to a number of autopsy photo exhibits and to all the autopsy slides based on Ohio Evid. R. 403, the sheer number of injuries to the victim and the severe damage to her organs were probative of Petitioner's purpose. The state had to not only show the cause of death, but also bore the burden to show that Petitioner acted "purposely" with the specific intention to cause his wife's death. Ohio Rev. Code §§ 2903.02(A) and 2901.22(A). The autopsy photographs were clearly relevant under Ohio Evid. R. 401 and 402. The photographs were not duplicative and

11

were necessary to meet the element of purpose in the killing so as to establish the crime of murder. They may also have tended to rebut Petitioner's assertion of provocation as an element of voluntary manslaughter. A review of the photographs reveals that this was relevant and necessary proof and produced no fundamental unfairness in Petitioner's trial.

In this case the state court's rulings clearly did not infringe upon any specific federal statutory or constitutional provision. There was likewise no denial of fundamental fairness in petitioner's trial. Because the photographs were relevant and admissible under state law, Petitioner cannot show that he was denied a fair trial by their admission. Habeas relief is not warranted on this claim.

### D. Ground Three: Ineffective Assistance of Trial Counsel

The Sixth Amendment, applicable to the states through the Fourteenth Amendment, provides a criminal defendant with "the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, n.14..., (1970)). To establish a claim of ineffective assistance of trial counsel, a criminal defendant must make a two-part showing:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687; *see O'Hara v. Brigano*, 499 F.3d 492, 505 (6th Cir. 2007).

Petitioner's basis for challenging the performance of this trial defense counsel is not entirely clear from the allegation stated in his habeas Petition. The Ohio Court of Appeals noted:

> **[*P39]** Defendant argues that his trial counsel performed deficiently because he failed to object (1) to the prosecutor's use of leading questions

12

> to the State's witnesses, (2) to hearsay elicited when Detective Simoni read into the record the contents of the two Valentine cards addressed to Cynthia Wade that Defendant found, and (3) argumentative questions the prosecutor asked Defendant during cross-examination.
>
> **[\*P40]**  Under both *Strickland* and *Bradley*, an error by counsel does not warrant setting aside a judgment of conviction if the error had no effect on the judgment.  Reversal is warranted only when the defendant demonstrates that there is a reasonable probability that but for counsel's errors, the result of the trial or proceeding would have been different.
>
> **[\*P41]** Although Defendant presents string citations to the trial transcript to demonstrate various instances where Defendant alleges counsel performed deficiently by failing to object, Defendant does not even suggest, much less demonstrate, how an objection in any of those instances would have made any difference in the outcome of this trial.  In other words, Defendant has not demonstrated a reasonable probability that but for counsel's errors in failing to object, the outcome of this trial would have been different, i.e., he would not have been found guilty of murder.  Defendant's inability to demonstrate prejudice, as defined by *Strickland,* is hardly surprising, given the strength of the State's evidence against Defendant. Ineffective assistance of counsel has not been demonstrated.

(Doc. # 5, Exhibit 7, p. 15-16).

Petitioner presents this Court with string citations to the trial transcript in support of his claim that his counsel rendered ineffective assistance.  Trial counsel in this case was not deficient, and Petitioner has failed to overcome the strong presumption that his counsel's conduct falls within the wide range of reasonable professional assistance.  Indeed, Petitioner's counsel was well-prepared and effective in executing the single most important part of this case:  the testimony of Petitioner himself.  (Doc. #8-4, Tr. 314-345; 359-360). Given the circumstances of the discovery of the killing of Mrs. Wade with Petitioner nearby holding the sword with which he murdered his wife along with all the other evidence in the case, there could only be one defense:  that the murder was in fact voluntary manslaughter.  Petitioner's testimony as elicited by his counsel was effective to that end, and Wade's counsel was successful in getting the court to instruct the jury on

voluntary manslaughter. The failure to object to the trial court's evidentiary rulings does not amount to ineffective assistance of counsel.

Moreover, as noted by the Ohio Court of Appeals, under the standard of *Strickland v. Washington,* an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland,* 466 U.S. at 691-92. To demonstrate prejudice, Petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694. The Court of Appeals determined that Petitioner's inability to demonstrate prejudice, as defined by *Strickland,* was reasonable, given the strength of the state's evidence against him. Petitioner has not met his burden to show that the Ohio Court of Appeals applied the *Strickland* standard in an objectively unreasonable manner or made an unreasonable determination of the facts to support its decision. For these reasons, Petitioner's Third Ground for Relief lack merit.

The conclusions reached herein are not debatable by jurists of reason and do not otherwise present issues adequate to deserve encouragement to proceed further. Consequently, a certificate of appealability should not issue.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Ronald Wade's Petition for Writ of Habeas Corpus (Doc. #1) be denied and dismissed;

2. A certificate of appealability under 28 U.S.C. §2253© not issue; and

3. The case be terminated on the docket of this Court.

November 10, 2009  
               s/ Sharon L. Ovington  
               Sharon L. Ovington  
               United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).